ute, as here applied, unduly interferes. By requiring from interstate carriers general submission to suit, it unreasonably obstructs, and unduly burdens, interstate commerce."

From this opinion it is easily ascertainable that the court followed the established rule that a soliciting agent was not doing business in the state within the purview of the service statute. The court unhesitatingly declared a statute unconstitutional if it imposed upon the carriers the obligation to submit to general suit as a condition precedent to the transaction of business by the soliciting agent. In the instant case the Missouri statute imposes no such condition. Neither does the Missouri statute provide for service of summons upon nonresident corporations except in cases where such corporations are doing business in the state.

Under the authorities, the defendant in the case at bar was not doing business in the state of Missouri, and in consequence was not subject to service of process.

The motion to quash summons and the return of the sheriff will be sustained, and the case will be dismissed for want of jurisdiction.

## In re HACKER.

District Court, S. D. New York.
November 2, 1929.

The report of the referee was as follows:

To the Honorable Judges of the District Court of the United States for the Southern District of New York:

I, John L. Lyttle, referee in charge of this case, have before me as referee, for examination, testimony, and report, the following matters:

(1) Report and account of Edward H. Cohn, as assignee for the benefit of creditors, filed with the referee August 21, 1929, asking commissions at $288.84;

(2) Petition for allowance to Otto W. Muehlenbrink, as attorney for the assignee,

filed with the referee August 21, 1929, asking an allowance of $150.

After giving by mail to approximately 93 creditors the accompanying notice of hearing, mailed September 19, 1929, a hearing was had in the above matters at my office on October 3, 1929, at 12:15 p. m. as appears by the accompanying stenographer's minutes.

At such hearing, there were no objections to the assignee's report as filed, nor any suggestions in regard to the other application.

The bankrupt was engaged in the furniture business and conducted two stores, one at 178 Suffolk street and the other at 163 Essex street, New York City.

### Assignee's Account.

On June 5, 1929, an assignment was made by the bankrupt for the benefit of his creditors to one Edward H. Cohn, an accountant, and who some years before had been the accountant for the bankrupt.

On or about June 5, 1929, the assignee took possession of the premises of the assignor.

On June 24, 1929, pursuant to an order of the Supreme Court, New York County, dated June 12, 1929, the assets coming into the possession of the assignee were sold by him, through A. Joseph & Co., who it is conceded are not the official auctioneers of this court, at gross $6,523.55, the auctioneers deducting for expenses $746.75, including commissions at 10 per cent., in addition to labor, advertising charges, and postage.

The auctioneers remitted to the assignee the balance, or $5,776.80, as follows: On June 25, 1929, $2,000; and on July 3, 1929, $3,776.80.

It is to be noted that the sale by the assignee took place on the same day as the involuntary petition in bankruptcy was filed, and an attempt was made by a creditor to stay the assignee's sale, such creditor obtaining an order from Judge Coleman dated June 24, 1929, to that effect, which apparently was modified on the same day by Judge Coleman in a memorandum as follows:

"Inasmuch as all but $206.00 worth of the goods had been sold before the service of this order, I vacate the order without in any way passing on the propriety of the sale.
"June 24, 1929        Frank J. Coleman, D. J."

The trustee in bankruptcy is Benjamin Weiss, represented by Blau, Perlman & Polakoff.

The assignee's attorney was Otto W. Muehlenbrink.

The bankrupt filed schedules September 6, 1929, showing liabilities of $24,672.82 and assets stock in trade $12,000, and debts due on open accounts $661.

The reason for the making of the assignment does not appear from the papers before me, although I am satisfied, from my examination of the assignee, that he acted in good faith and without knowledge that a petition in bankruptcy was about to be filed. (S. M. p. 3.)

He has also testified that the sale was 99 per cent. complete when he was served with Judge Coleman's order just referred to.

The assignee states his gross receipts at $5,787.43, which includes the net proceeds of the auction sale, in addition to $10.63 interest on his account.

No disbursements were made by the assignee, and his unpaid charges and claims against the fund are reported in Schedule B annexed to his report.

The assignee's balance, $5,787.43, appears to have been turned over to the trustee; see trustee's first report filed September 6, 1929, and letter of trustee's attorneys, dated October 9, 1929.

The sale conducted by the assignee was, as stated, under an order of the Supreme Court, New York County, and there is no claim before me that the sale was not properly conducted.

The gross proceeds of the auction sale amounted to $6,523.55, from which the auctioneer deducted a commission of 10 per cent., or $652.35, and other items for labor $77, advertising $13.40, and postage $4.

I regard the labor charge of $77 in a case of this kind as a reasonable one, as also the advertising and other expenses. In fact, these charges have not been challenged in any way.

District Rule 27 provides that the auctioneer of this court shall be allowed reasonable disbursements for labor and all other actual necessary disbursements.

The subject of allowances to common-law trustees or assignees has recently been passed upon by me in the case of In re Helaine Madge, Inc., 14 A. B. R. (N. S.) 119, which report was affirmed by Judge Bondy; see also my decision In re Jack Stolkin, 14 A. B. R. (N. S.) 596, affirmed by Judge Coleman, to both of which reports I respectfully refer.

■ On the evidence in this case, I find that the only payment deducted by the assignee *prior* to the filing of the petition in bankruptcy was the 10 per cent. auctioneer's com-

mission, which was deducted by the auctioneer *prior* to the remittance to the assignee.

As I have already found that the assignee acted in good faith, I am without jurisdiction to inquire into the auctioneer's charge of 10 per cent. See In re Helaine Madge, Inc., supra; In re Jack Stolkin, supra; and In re Radio Stores (No. 38695) Knox, J.[1]; In re Poverstein, 14 A. B. R. (N. S.) 128.

Coming now to the application of the assignee for commissions of $288.84: Such claim is based on section 21, of the Debtor and Creditor Law (Consol. Laws N. Y., c. 12). Such section reads [in part] as follows: "The assignee or assignees named in any assignment shall receive for his or their services a commission of not to exceed five per centum on the whole sum which will have come into his or their hands, except in a case where such percentage shall not equal two hundred dollars in which case the court may grant such a sum which with such percentage shall equal two hundred dollars."

■ This accounting involves the application of two well-established rules, viz.: Any claim by an assignee, or by his attorney, for services is only an equitable one and can be allowed only to the extent that the services rendered may be deemed to have been beneficial to the preservation of the estate. Randolph v. Scruggs, 190 U. S. 533, 23 S. Ct. 710, 47 L. Ed. 1165, 10 A. B. R. 1; In re Sobol (D. C. N. Y.) 230 F. 652, 35 A. B. R. 804. See, also, Remington on Bankruptcy, vol. 5, § 2071, p. 119; Turin Leather Goods Company, Inc. (Bankrupt, No. 45024) [no opinion filed].

■ The bankruptcy court, after the filing of a petition, has exclusive jurisdiction to pass on the account of an assignee made before the filing of the petition in bankruptcy. In re Neuburger, Inc. (D. C. N. Y.) 233 F. 701, 37 A. B. R. 248, affirmed (C. C. A. 2d Cir.) 240 F. 947, 948, 39 A. B. R. 139.

In the latter case, Judge Rogers in writing for the court stated: "If an adjudication in bankruptcy follows an assignment, it has the effect of automatically and of its own force avoiding the assignment. The trustee immediately becomes invested with title to the property. He does not take title as the successor of the assignee, but as the successor of the bankrupt. It becomes at once the duty of the assignee to turn over to the trustee, when elected, the estate covered by the assignment, and in the meantime to preserve the estate intact. If he does more than that,

he assumes the risk of his conduct, as he is chargeable with knowledge of the extent of his powers. The adjudication of the assignor in bankruptcy invests the bankruptcy court from that time with exclusive jurisdiction of the bankrupt's estate. There can be no question of concurrent jurisdiction with the state court in respect thereof."

See, also, In re International Shoe Co. v. Pinkus, 278 U. S. 261, 49 S. Ct. 108, 73 L. Ed. 318, 13 A. B. R. (N. S.) 108.

■ Applying the above rules of law in this case as laid down by the above decisions, I am of the opinion that any claim by him or his attorney is only an equitable one and can be allowed only to the extent that the services rendered were deemed to have been beneficial to the preservation of the estate. In this case no payments were made after the filing of the petition. The assignee does not appear to have made any attempt to retain the body of the estate as against the trustee in bankruptcy.

It is clear to the referee, on the evidence, that the only deduction made by the assignee prior to his turning the assets over to the trustee in bankruptcy was the amount deducted by the auctioneer for 10 per cent. commissions.

No other disbursements were deducted.

In fact, all the assignee's liabilities were reported to this court to be passed upon by it.

There is no evidence to establish that the assignee had any notice at the date of the assignment that a petition in bankruptcy would be or was about to be filed.

The assignee appears to have acted promptly and diligently sold the assets coming into his possession, thereby saving the expense of maintaining the property, such as rent, insurance, etc.

There is no doubt that the assignee's services were beneficial to the preservation of the estate.

Applying the rules of law laid down in the foregoing decisions, I recommend that the assignee's compensation be fixed at the sum of $200.

■ Coming now to the assignee's liabilities set forth in

### Schedule B.

The claim of the landlord of premises 163 Essex street, $368.72, and of 178 Suffolk street, $104, in my opinion, should be allowed. (S. M. p. 5.)

The claim for one year's premium on the assignee's bond at $50 I liquidate at $12.50 for a three months' premium.

---

[1] Memorandum on back of motion papers.

The claim of the assignee for expenses for locks on doors, $8.40, I allow.

#### Attorney for Assignee.

Coming now to the application of Otto W. Muehlenbrink, as attorney for the assignee:

This application is to the effect that he secured an order of sale from a judge of the Supreme Court, New York County, caused the necessary advertising to be made, caused the assignee's bond in the sum of $5,000 to be filed, prepared and filed a complete itemized schedule of creditors, etc., for which an allowance in the sum of $150 is asked.

The list just referred to is annexed to the application.

Under all the circumstances, I recommend an order as follows:

(1) Passing the assignee's report as filed, discharging him and canceling his bond.

(2) Allowing to Edward H. Cohn, the assignee, in full of his compensation as such, the sum of $200, in addition to disbursements for locks, etc., $8.70, and directing the same to be paid by the trustee.

(3) Directing the trustee to make the following payments:

Landlord of premises 163 Essex St.,
N. Y. .........................$368.72
Landlord of premises 178 Suffolk St.,
N. Y. .......................... 104.00
Fidelity & Deposit Company, 55 Liberty St., N. Y. premium on assignee's bond liquidated at....... 12.50

Or a total of.................$485.22

(4) Allowing to Otto W. Muehlenbrink, attorney for the assignee, the sum of $100 in full of services and disbursements as such, and directing same be paid by the trustee.

Notice of application for any order on this report should be given, as follows:

Edward H. Cohn, assignee, 1328 Broadway, N. Y.

Otto W. Muehlenbrink, attorney for assignee, 1328 Broadway, N. Y.

Benjamin Weiss, trustee, 206 Lexington avenue, N. Y.

Blau, Perlman & Polakoff, attorneys for trustee, 475 Fifth avenue, N. Y.

Chairman of creditors' committee.

It is directed that this report be placed on the Bankruptcy Motion Calendar for hearing, not later than October 30, 1929, at 10:30 a. m.

New York, October 22, 1929.
John L. Lyttle
Referee in Bankruptcy.

#### Statement.

Assignee's gross receipts .........$5,787.43
Assignee's disbursements ...........none
  Balance turned over to Benjamin Weiss, trustee.........$5,787.43
Allowances recommended:
  Assignee, in full......$200.00
  Plus disbts. for locks,
    etc. ............... 8.70
  Landlord premises 163
    Essex St., N. Y..... 368.72
  Landlord premises 178
    Suffolk St., N. Y.... 104.00
  Fidelity & Deposit Co.
    premium assignee's
    bond 3 months...... 12.50
  Attorney for assignee,
    in full fee and
    disbts. ............ 100.00   793.92

    Balance, if above allowances approved.......$4,993.51
Claims filed:
  Six claiming priority aggregating .............$ 553.00
  Fifty general, aggregating $17,013.06
  Each 1 per cent. dividend
    requires ..............$ 170.13
No previous allowances paid.
The bankrupt's schedules show no money paid to his attorney.
New York, October 22, 1929.
John L. Lyttle
Referee in Bankruptcy.

Blau, Perlman & Polakoff, of New York City, for trustee in bankruptcy.

Otto W. Muehlenbrink, of New York City, for assignee.

WOOLSEY, District Judge. This admirably clear and able report is in all respects approved and hereby confirmed, and all the allowances therein recommended are approved. I suggest that it be printed in the Reports as a useful authority.